IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL NO: 25- |
| --- | --- | --- |
| v. | : | DATE FILED: |
| ALL VETERINARY SUPPLY INC. | : | VIOLATION:<br>21 U.S.C. §§ 331(a), 333(a)(1), and 352(f)(1) (introduction and delivery of misbranded drugs into interstate commerce - 1 count)<br>Notice of forfeiture |
|  | : |  |
|  | : |  |
|  | : |  |

## INFORMATION

### COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times relevant to this information:

### INTRODUCTION

**A.     Federal Regulation of Veterinary Drugs**

1.     The Food and Drug Administration ("FDA") of the United States Department of Health and Human Services ("HHS") regulated the distribution and labeling of all drugs, including animal drugs, shipped or received in interstate commerce through enforcement of the Federal Food, Drug, and Cosmetic Act. 21 U.S.C § 301 *et seq.* ("FDCA").

2.     The FDCA defined "drugs" as, among other things, articles intended for use in the cure, mitigation, treatment or prevention of disease in man or other animals; and articles (other than food) intended to affect the structure or function of the body of man or other animals. 21 U.S.C. § 321(g)(1)(B) and (C).

3. The FDCA defined a "prescription animal drug" as a drug intended for use by animals other than man that: (A) because of its toxicity, or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, was not safe for use except under the supervision of a licensed veterinarian; or (B) was limited by an approved New Animal Drug Application ("NADA"), a conditionally-approved application, or an index listing, to use under the professional supervision of a licensed veterinarian, and would be dispensed only by or upon the lawful written or oral order of a licensed veterinarian in the course of the veterinarian's professional practice. 21 U.S.C. § 353(f)(1)(A).

4. Xylazine was one such drug covered by the FDCA. Xylazine was FDA-approved as a veterinary prescription drug for use in animals as a sedative and analgesic (*i.e.*, pain reliever). The drug was distributed and available as an injectable in vial form and used in animals pursuant to a valid veterinarian prescription.

5. The FDCA outlined several types of conduct that could result in a drug, such as xylazine, becoming misbranded. 21 U.S.C. § 352, including the following conduct:

    a. While held for sale, the drug was dispensed without a lawful written or oral order of a licensed veterinarian in the course of the veterinarian's professional practice (21 U.S.C. § 353(f)(1)(C)); or

    b. The drug's labeling failed to bear adequate directions for use (21 U.S.C. § 352(f)(1)). "Adequate directions for use" meant directions under which a layman could use a drug safely for the purposes for which it is intended. 21 C.F.R. § 201.5.

6. "Adequate directions for use" could not be written for prescription animal drugs because, by definition, they required the professional supervision of a licensed veterinarian

for use. 21 U.S.C. § 353(f)(1). However, prescription animal drugs were exempt from the requirement of adequate directions for use in certain, specific circumstances. *See* 21 U.S.C. § 353(f)(2)(A). A dispensed prescription drug qualified for this exemption if (1) dispensed by a licensed veterinarian and the animal drug bore a label containing the name and address of the practitioner and any directions for use and cautionary statements specified by the practitioner; or (2) dispensed by filling the lawful order (prescription) of a licensed veterinarian and the animal drug bore a label containing the name and address of the dispenser, the serial number and the date of the order or of its filling, the name of the licensed veterinarian, and the directions for use and cautionary statements, if any, contained in such order. *Id.*; 21 U.S.C. §§ 353(f)(2)(B)(i), (B)(ii).

7. "Wholesale Distribution" meant the distribution or receipt of a prescription drug by a person other than the consumer or patient but did not include the lawful dispensing of a prescription drug by a practitioner and/or pharmacist. 21 U.S.C. § 353(e)(4). A "wholesale distributor" of prescription drugs meant a person (other than the manufacturer, a manufacturer's co-licensed partner, a third-party logistics provider, or repackager) engaged in wholesale distribution. *See generally* 21 U.S.C. § 360eee(29).

8. Wholesale distribution of prescription animal drugs was exempt from the "adequate directions for use" requirement described above if the drugs were in the possession of (1) a person (or his agent or employees) regularly and lawfully engaged in the manufacture, transportation, storage, or wholesale distribution of drugs that were to be used only by or on the prescription or other order of a licensed veterinarian; (2) a retail, hospital, or clinic pharmacy or other person authorized under state law to dispense veterinary prescription drugs that were to be used only by or on the prescription or other order of a licensed veterinarian; or (3) a licensed

veterinarian for use in the course of his professional practice. 21 C.F.R. § 201.105(a)(1)(i)-(iii). The drug also must have been dispensed in accordance with 21 U.S.C. § 353(f) (outlined above), and, among other things, must have contained a label stating the recommended or usual dosage, directions for veterinarians, and applicable warnings. 21 C.F.R. §§ 201.105(c)(1), (d).

9. Whether a person or company was "lawfully engaged" in wholesale distribution was dependent on, among other things, state licensing requirements. *See generally* 21 U.S.C. § 353(e).

10. A prescription animal drug that was distributed by a person or company that was not "lawfully engaged" in the wholesale distribution of drugs would not have qualified for an exemption to the "adequate directions for use" requirement and would therefore have been deemed misbranded. 21 U.S.C. §§ 352(f)(1); 353(f)(1).

11. Additionally, if a shipment or delivery, or any part thereof, of a drug which was exempt from the requirements of 21 U.S.C. § 352(f)(1) because it met the conditions of the regulation (21 C.F.R. § 201.105) was made to a person in whose possession the drug was not exempt, the exemption granted to the shipment or delivery would have expired at the beginning of that shipment or delivery. The causing of an exemption to expire was an act which resulted in such drug being misbranded. 21 C.F.R. § 201.127.

12. The FDCA's restrictions on veterinary prescription drugs were designed to achieve a variety of objectives. For example, the restrictions were meant to protect animals from the potential harms of prescription drugs and prevent overuse of certain prescription drugs. More broadly, the FDCA's restrictions were designed to prevent drugs from diversion and being used outside of this closed, regulated supply chain. Prescription animal drugs, especially sedatives,

that escaped the regulated supply chain could have led to a variety of negative, harmful consequences.

13. The doing or causing of the following acts was prohibited under the FDCA:

    a. The introduction or delivery for introduction into interstate commerce of any animal drug that was misbranded. 21 U.S.C. § 331(a); and

    b. Doing any act with respect to a drug, if such act was done while the drug was held for sale after shipment in interstate commerce, that resulted in the drug being misbranded. 21 U.S.C. § 331(k).

**B.**    **Florida State Regulation of Veterinary Drugs**

14. As outlined above, the FDCA referenced the licensing and legal authority under state law in certain circumstances. The authority in the first instance to prescribe, dispense and distribute wholesale prescription animal drugs in any state, and the limits regarding that authority, were defined by the respective states. Defendant ALL VETERINARY SUPPLY INC. ("ALL VET"), was located in Florida.

15. To be "lawfully engaged" in the wholesale distribution of animal drugs in Florida, a Florida-based person or company needed an active Veterinary Prescription Drug Wholesale Distributor ("VPDW") permit or a Prescription Drug Wholesale Distributor permit ("PDWD") with the Florida Department of Business and Professional Regulation ("DBPR"). *See* Fla. Stat. §§ 499.01(1); 499.01(2)(e); 499.01(2)(l); 499.003(16); 499.005(22).

16. In contrast, a Limited Prescription Drug Veterinary Wholesale Distributor permit ("LPDW") allowed only the distribution of prescription animal drugs (a) to licensed veterinarians practicing on a full-time basis; (b) to those regularly and lawfully engaged in the

instruction of veterinary medicine; (c) to law enforcement personnel for their official duties; (d) for research purposes; or (e) for use in chemical analysis or physical testing for law enforcement activities. Fla. Stat. § 499.01(2)(m).

17.  A Veterinary Prescription Drug Retail Establishment permit ("VPDR") allowed the sale of veterinary prescription drugs to the public based on a valid, written order from a veterinarian licensed in Florida, who had a valid client-veterinarian relationship with the purchaser's animal. Fla. Stat. § 499.01(2)(k).

18.  For purposes of the FDCA, a company that distributed or wholesaled veterinary prescription drugs without a proper state permit was not "lawfully engaged" in the wholesale distribution of drugs, and, accordingly, such drugs distributed or wholesaled were misbranded, as they were not exempt from the requirement that their labeling contain adequate directions for use. *See* 21 C.F.R. § 201.105(a)(1); 21 U.S.C. § 352(f)(1).

### ALL VETERINARY SUPPLY and Its Illegal Sales of Xylazine

19.  Defendant ALL VET was a Florida corporation with its principal place of business in Doral, Florida. Defendant ALL VET was a distributor of veterinary prescription drugs to customers, including to customers outside of Florida. Defendant ALL VET obtained veterinary prescription drugs from other companies for further distribution.

20.  Before on or about August 31, 2015, defendant ALL VET operated in Florida with a Prescription Drug Wholesale Distributor ("PDWD") permit. On or about August 31, 2015, defendant ALL VET notified Florida state authorities of its intent to relinquish that permit. In or around May 2015, defendant ALL VET applied for a Limited Prescription Drug Veterinary Wholesale Distributor ("LPDW") permit. Florida state authorities granted defendant ALL VET the LPDW permit on or about August 17, 2015. At all times relevant to this

information, defendant ALL VET only held a LPDW permit and a Veterinary Prescription Drug Retail Establishment permit.

21. At all times relevant to this information, defendant ALL VET engaged in the sale and distribution of xylazine to other individuals and entities. The vast majority of defendant ALL VET's sales of xylazine were attributable to two purchasers: PR Customer 1 and PR Customer 2.

22. Defendant ALL VET sold xylazine to PR Customer 1 and PR Customer 2 for wholesaling, in violation of its LPDW permit.

23. From on or about January 7, 2020 to on or about January 24, 2023, defendant ALL VET engaged in the illegal, unlicensed wholesale distribution of xylazine and caused shipments of approximately 180,993 units of misbranded xylazine to PR Customer 1 and PR Customer 2, which shipments travelled in interstate commerce. Defendant ALL VET made approximately $748,507.25 (seven hundred forty-eight thousand, five hundred seven dollars and twenty-five cents) from the sales.

24. In furtherance of this misbranding:

    a. Defendant ALL VET distributed veterinary prescription drugs, specifically xylazine, in a wholesale capacity to PR Customer 1 and PR Customer 2, companies that were purportedly engaged in the further wholesale distribution of these veterinary prescription drugs.

    b. Defendant ALL VET was not properly authorized under Florida law to wholesale veterinarian prescription drugs to PR Customer 1 and PR Customer 2 for further wholesale distribution.

    c. Since these veterinary prescription drugs were not lawfully distributed, they failed to qualify for the exemption from the requirement that they bear labeling containing adequate directions for lay use. Accordingly, such shipments were shipments of misbranded drugs.

    d. In addition, defendant ALL VET's xylazine sales resulted in the drugs being misbranded through use of the drug without a proper veterinary prescription. Again, defendant ALL VET's conduct resulted in the xylazine being misbranded.

  25. From on or about January 7, 2020 to on or about January 24, 2023, defendant

**ALL VETERINARY SUPPLY INC.**

introduced and delivered for introduction, and caused the introduction and delivery for introduction, into interstate commerce, of approximately 180,993 units of the veterinary prescription drug xylazine that was misbranded, in that the drugs' labeling did not bear adequate directions for the use of such drugs and that the drugs were used without a proper veterinary prescription.

  All in violation of Title 21, United States Code, Sections 331(a), 333(a)(l), and 352(f)(1).

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violation of Title 21, United States Code, Sections 331(a), 333(a)(1), and 352(f)(1), set forth in this information, defendant

**ALL VETERINARY SUPPLY INC.**

shall forfeit to the United States veterinary prescription drugs that were misbranded or became misbranded as a result of the defendant's conduct, pursuant to 21 U.S.C. § 334 and 28 U.S.C. § 2461.

2. Because the above-described forfeitable property has been transferred and sold to third parties and cannot be located upon the exercise of due diligence, the United States intends to seek forfeiture of substitute property in the form of approximately $748,507.25 (seven hundred forty-eight thousand, five hundred seven dollars and twenty-five cents) pursuant to 21 U.S.C. § 853(p).

All pursuant to Title 21, United States Code, Sections 334, 853(p), and Title 28, United States Code, Section 2461.

*Salvatore L. Astolfi* for
**DAVID METCALF**
**UNITED STATES ATTORNEY**

No. _ _ _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

ALL VETERINARY SUPPLY INC.

INFORMATION

21 U.S.C. §§ 331(a), 333(a)(1), and 352(f)(1) (introduction and delivery of misbranded drugs into interstate commerce - 1 count)

A true bill.

_____
Foreperson

Filed in open court this _____ day,
Of _____ A.D. 20 _____

_____
Foreperson

Bail, $ _____